726 A.2d 4 (1999)
Gary DANCE, Appellant,
v.
COMMONWEALTH of Pennsylvania, PENNSYLVANIA STATE POLICE.
Gary Dance
v.
Commonwealth of Pennsylvania, Pennsylvania State Police, Appellant.
Commonwealth Court of Pennsylvania.
Argued November 19, 1998.
Decided January 27, 1999.
Reargument Denied March 30, 1999.
*5 Craig A. Markham, Erie, for appellant.
Calvin R. Koons, Senior Deputy AG, Harrisburg, for appellee.
Before PELLEGRINI, J., KELLEY, J., and NARICK, Senior Judge.
KELLEY, Judge.
In these consolidated appeals, Gary Dance and the Pennsylvania State Police (PSP) appeal from two separate orders of the Court of Common Pleas of Erie County (trial court) dated April 22, 1998 and May 20, 1998, denying Dance's and the PSP's post-trial motions both of which sought a new trial.[1] We affirm in part and reverse in part.
The facts in this matter are as follows.[2] Dance is employed by the PSP with the current rank of sergeant. On March 18, 1992, Dance's wife filed a protection from abuse order and was granted exclusive possession of the marital residence pending a hearing. Subsequently, Dance was granted exclusive possession of the marital residence by court order on June 4, 1992 and Mrs. Dance was given 60 days to vacate the premises.
On July 28, 1992, Mrs. Dance filed a criminal complaint with the PSP alleging that she had received harassing telephone calls from Dance. Sgt. Michael Hample of the PSP was assigned to investigate the matter. Contemporaneously, Sgt. John Gallaher of the Internal Affairs Division was assigned to conduct a parallel investigation into whether Dance had breached any rules of employee conduct. On July 31, 1992, after meeting with Mrs. Dance and obtaining her consent, Sgt. Gallaher presented a written memorandum to District Attorney William Cunningham, seeking his consent to electronically record Mrs. Dance's incoming telephone calls. The district attorney's consent was obtained and, later that day, Sgt. Gallaher installed an electronic eavesdropping device on the telephone at Dance's residence.[3] Interceptions of incoming calls were conducted daily by Sgts. Gallaher and Hample as well as by Trooper Tracey McCracken, who was enlisted to assist in the operation of the recording *6 equipment. The electronic eavesdropping of the telephone calls was terminated on August 3, 1992.
After reviewing the evidence, which consisted of seven intercepted calls, the district attorney concluded that there was insufficient evidence to sustain criminal charges. Consequently, the criminal investigation was terminated. Nonetheless, the internal affairs investigation proceeded and Sgt. Gallaher was given working copies of the telephone recordings. Utilizing these copies, Sgt. Gallaher prepared a written report for his superiors. This report included direct quotes from the intercepted calls. Eventually it was determined that Dance had violated certain field regulations and Dance was consequently suspended for a period of 20 days without pay and ordered transferred to a different troop.
Pursuant to his rights under a collective bargaining agreement, Dance requested an appeal to an independent arbitrator for a review of the disciplinary action. In preparation for that proceeding, the intercepted tape recordings were played for Ms. Donna Paule, an advocate assigned to represent the PSP. Subsequently, the question arose as to the admissibility of the consensual interceptions in the upcoming administrative proceeding and ultimately the interceptions were not utilized. Following arbitration, the arbitrator upheld Dance's 20 day suspension but found that the intertroop transfer was unnecessary.
Dance filed a civil complaint against the PSP. Therein, Dance alleged that the interception of the telephone conversations constituted a violation of Article 1, Section 8 of the Pennsylvania Constitution,[4] and that the use and disclosure by the PSP of the intercepted calls constituted a violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act (Wiretap Act), 18 Pa.C.S. §§ 5701-5781. Thereafter, Dance filed a partial motion for summary judgment on the issue of liability and the PSP filed a motion for summary judgment. The trial court granted Dance's motion and denied the PSP's motion.
On the issues raised in these consolidated appeals, the trial court found that the interception of Dance's telephone calls did not violate the Wiretap Act because section 5704(2) of the Wiretap Act permits the electronic interception of communications involving suspected criminal activities provided that one of the parties to the communication has given prior consent and the interception is approved by the district attorney. Here, the calls were intercepted by the PSP after Dance's wife had given prior consent, the district attorney approved the interception, and the interception was done pursuant to the investigation of criminal activity.
The trial court found further that the PSP did not violate the Wiretap Act or make improper use of the information when the PSP, through Sgt. Hample, shared the tape recordings with Sgt. Gallaher for the use of the latter's internal affairs investigation. The trial court pointed out that section 5717 of the Wiretap Act permits law enforcement officers to disclose the contents of intercepted communications to another investigative or law enforcement officer[5] to the extent that such disclosure or use is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure. 18 Pa.C.S. § 5717. The trial court found that both Sgt. Hample and Sgt. Gallaher were law enforcement officers authorized to investigate the crimes set forth in section 5708 of the Wiretap Act.[6] Therefore, the trial court reasoned that disclosure to Sgt. Gallaher was proper as long as the disclosure or use of the communication was appropriate to the proper performance of Sgt. Gallaher's duties. The trial court concluded that since *7 Sgt. Gallaher's official duties included conducting internal investigations for the PSP, disclosure to and by him did not violate the Wiretap Act.
The trial court buttressed its holding by relying on our Supreme Court's decision in Boettger v. Miklich, 534 Pa. 581, 633 A.2d 1146 (1993), wherein the court prohibited disclosure of intercepted communications to internal revenue agents because the agents were not investigative or law enforcement officials to whom disclosure is permitted under the Wiretap Act. By its holding, the trial court rejected Dance's contention that the use and disclosure of the intercepted conversations is limited to criminal investigations.
With respect to the disclosure of the intercepted conversations to Ms. Donna Paule, the trial court found that the PSP did violate the Wiretap Act as Ms. Paule was a civilian employee, not a law enforcement officer authorized to investigate the crimes enumerated in the Wiretap Act. The trial court also rejected the PSP's good faith defense to Dance's claim that it violated the Wiretap Act by disclosing the information to Ms. Paule. Section 5725(c) of the Wiretap Act provides that it is a defense to an action that the actor acted in good faith reliance on a court order or the provisions of this chapter. 18 Pa.C.S. § 5725(c). The trial court stated that there was no court order and that nothing in the provisions of the Wiretap Act permitted such disclosure.
The case then proceeded to trial where only the issue of damages was to be presented to the jury. However, after jury selection but before the jury was sworn in, the parties agreed to waive their right to a jury trial as to damages. By stipulation, the parties agreed that actual damages in this matter were in the amount of $5,000 for damages related to the disclosure of the intercepted conversations to Ms. Paule. The parties also agreed, and the trial court found, that the amount of reasonable attorney fees and litigation costs was $23,570.50. The parties did not waive their right to contest the prior order of the trial court dated August 12 1997, concerning liability. Accordingly, the trial court entered an order on April 16, 1998 awarding damages to Dance in the amount of $28,570.50. Following denial of post-trial motions seeking a new trial, Dance and the PSP filed cross-appeals with this court.[7] We will first address the issues raised by Dance in his appeal.
I. DANCE'S APPEAL
Herein, Dance raises the following issues:
1. Whether the trial court erred in ruling, as a matter of law, that the PSP did not violate the Wiretap Act by intercepting Dance's telephone calls for a purpose other than investigating suspected criminal activity;
2. Whether the trial court erred in ruling, as a matter of law, that the PSP did not violate the Wiretap Act by using and disclosing the contents of the intercepted telephone calls for a purpose other than investigating suspected criminal activities.
With respect to the first issue, Dance argues that the conversations between Dance and his wife were protected under the Wiretap Act and Dance had a reasonable expectation that his conversations were not being intercepted or electronically seized and carried away. Dance contends that the PSP violated the Wiretap Act by conducting electronic eavesdropping for a purpose other than investigating criminal activities. Dance argues that although the interception of Dance's conversations was part of the investigation of alleged criminal activity, it was also done for a secondary purpose, namely as part of the internal affairs investigation. Dance contends that it is undisputed that Sgt. Gallaher was assigned at the outset to conduct an internal affairs investigation to gather evidence to determine whether Dance breached any of the rules of employee conduct. Therefore, Dance argues, the coupling of the internal affairs investigation with the alleged criminal activity results in a violation *8 of section 5704 of the Wiretap Act, 18 Pa.C.S. § 5704.
Section 5704(2) of the Wiretap Act, 18 Pa.C.S. § 5704(2), provides, in pertinent part, that it shall not be unlawful for:
[a]ny investigative or law enforcement officer... to intercept a wire, electronic or oral communication involving suspected criminal activities where:
* * * * * *
(ii) one of the parties to the communication has given consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General ... or the district attorney ... of the county wherein the interception is to be made, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception; however, such interception shall be subject to the recording and record keeping requirements of section 5714(a) (relating to recording of intercepted communications) and that the Attorney General ... [or] district attorney ... authorizing the interception shall be the custodian of the recorded evidence obtained therefrom.
The focus and purpose of the Wiretap Act is protection of privacy. United Telephone Co. of Pennsylvania v. Pennsylvania Public Utility Commission, 676 A.2d 1244 (Pa.Cmwlth.1996). As such, the provisions of the Wiretap Act must be strictly construed. Boettger. Strict guidelines are contained within the Wiretap Act as to how and when electronic surveillance methods shall be permitted. Id.
In the present case, those strict guidelines were adhered to with respect to the interception and monitoring of Dance's telephone conversations with his wife for the purpose of investigating suspected criminal activity. The interception and monitoring was conducted pursuant to the investigation of criminal activity as required by section 5704(2) of the Wiretap Act. Sgt Hample, as the criminal investigator, was investigating Mrs. Dance's claims that Dance was harassing her in an attempt to discern whether criminal charges were warranted. Prior consent to intercept and monitor the telephone calls was obtained from Mrs. Dance, one of the parties to the communication, as required by section 5704(2)(ii). In addition, approval for the interception of the telephone calls was secured from the local district attorney as required by section 5704(2)(ii).
The fact that Sgt. Gallaher, as a member of the Internal Affairs Division, was also present and participated in the interception and monitoring of the telephone calls did not result in a violation of the Wiretap Act. Sgt. Gallaher falls within the definition of "investigative or law enforcement officer" under section 5702 of the Wiretap Act, 18 Pa.C.S. § 5702. See Footnote 5. Section 5704(2) of the Wiretap Act permits any investigative or law enforcement officer to intercept electronic or oral communications involving suspected criminal activities if the required procedures have been followed. Sgt. Gallaher is empowered as a state police officer to conduct investigations of or to make arrests for the offenses enumerated in section 5708 of the Wiretap Act. Accordingly, his participation in the interception of Dance's telephone calls with his wife did not violate the Wiretap Act. However, the disclosure to and the use by Sgt. Gallaher of the intercepted telephone calls by the PSP for a purpose other than investigating suspected criminal activity calls for a different conclusion.
Dance argues that the use and disclosure of the intercepted conversations by the PSP for other than the investigation of suspected criminal activities violated the Wiretap Act. We agree. The sharing of the tape recordings of the intercepted telephone conversations between Dance and his wife with Sgt. Gallaher for the sole purpose of conducting an internal affairs investigation into whether Dance violated certain work rules violated the Wiretap Act.
The Wiretap Act requires strict record keeping of all intercepted communications. See sections 5704, 5714, 5715 of the Wiretap Act, 18 Pa.C.S. §§ 5704; 5714; 5715. Disclosure of the contents of intercepted communications is permitted in limited circumstances. Section 5717 of the Wiretap Act, 18 Pa.C.S. § 5717, governs the disclosure or use of contents *9 of wire, electronic or oral communications or evidence derived therefrom and provides, in pertinent part, as follows:
(a) Investigative activities.Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, electronic or oral communication, or evidence derived therefrom, may disclose such contents or evidence to another investigative or law enforcement officer ... or make use of such contents or evidence to the extent that such disclosure or use is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.
(b) Evidence.Any person who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, electronic or oral communication, or evidence derived therefrom, may disclose such contents or evidence to an investigative or law enforcement officer and may disclose such contents or evidence while giving testimony under oath or affirmation in any criminal proceeding in any court of this Commonwealth or of another state or of the United States or before any state or Federal grand jury or investigating grand jury.
Section 5718 of the Wiretap Act, permits the disclosure, in accordance with section 5717(a), by an investigative or law enforcement officer of authorized intercepted communications relating to offenses enumerated in section 5708 other than those for which the interception was authorized. 18 Pa.C.S. § 5718. Such disclosure may be in testimony under oath or affirmation in any criminal proceeding. Id.
Herein, Dance's telephone conversations were intercepted by investigative or law enforcement officers for the purpose of investigating suspected criminal activities. Thus, sections 5717 of 5718 of the Wiretap Act govern the disclosure of the contents of those intercepted calls. These two provisions of the Wiretap Act, coupled with the purpose of the Wiretap Act to protect privacy, leads this court to hold that disclosure of communications intercepted pursuant to section 5704(2) of the Wiretap Act by a law enforcement officer to another for a purpose other than investigating suspected criminal activity or providing evidence in a criminal proceeding is a violation of the Wiretap Act. Thus, the term "official duties" as used in section 5717 of the Wiretap Act means official duties with respect to the investigation of suspected criminal activities or the offenses enumerated in section 5708 of the Wiretap Act. Any other interpretation would render meaningless the mandate that the Wiretap Act be strictly construed as it is a statute, which is in derogation of the constitutional right to privacy. Boettger. As stated by our Supreme Court in Boettger:
No violations of any provisions of the Act will be countenanced, nor will the failure of prosecutors to diligently follow the strict requirements of the Act be lightly overlooked. We remain steadfast in this determination because there can be no greater infringement upon an individual's rights than by an indiscriminate and unchecked use of electronic devices. Where, in the wisdom of the legislature, such devices may be authorized, as in the present act, that use will be strictly adhered to and jealously enforced; for the alternative, no privacy at all, is unthinkable.
Boettger, 534 Pa. at 586, 633 A.2d at 1148.
In the present case, the contents of the intercepted telephone calls were shared with Sgt. Gallaher for the purpose of determining whether Dance had violated certain work rules. Although Sgt. Gallaher is a law enforcement officer authorized to investigate the offenses enumerated in section 5708 of the Wiretap Act, his official duties at the time of the disclosure did not include the investigation of suspected criminal activity. His official duties were to conduct investigations of members of the PSP for the internal affairs division. Therefore, the PSP violated the provisions of the Wiretap Act when it shared with Sgt. Gallaher working copies of the tape recordings of the intercepted telephone calls between Dance and his wife. Accordingly, the trial court erred by denying Dance's post trial motion seeking a new trial.
II. PSP'S APPEAL
In its appeal to this court from the trial court's order denying its post trial motion, the PSP raises the following issues:

*10 1. Whether the PSP violated the Wiretap Act when it disclosed the intercepted telephone conversations to the PSP's own advocate who had been assigned to represent the PSP at the grievance arbitration hearing; and
2. Whether the PSP can be held civilly liable for the interception and disclosure of Dance's telephone conversations with his wife where it acted in good faith reliance on the provisions of the Wiretap Act.
With respect to the first issue, the PSP contends that it did not violate the Wiretap Act when it disclosed the intercepted conversations to Ms. Paule. The PSP argues that although Ms. Paule is not a law enforcement officer, section 5717 permits the disclosure to Ms. Paule. The PSP contends that the disclosure of information to Ms. Paule in preparation for an arbitration hearing was appropriate and was implicitly authorized by section 5717 of the Wiretap Act: (1) because the ability to monitor and discipline its own officers is not just an important, but necessary function of the PSP; and (2) because the PSP must act through agents and employees.
Furthermore, the PSP contends, the institutional safeguards created to protect Dance's privacy rights worked well in this case. The PSP states that it recognized that disclosure of the information at the arbitration hearing would probably be a violation of the Wiretap Act; therefore, the information was not disclosed to anyone except PSP's employees and Ms. Paule, the PSP's advocate.
We reject the PSP's contentions. Section 5717 of the Wiretap Act expressly states that disclosure or use of the contents of wire, electronic or oral communications may only be made by an investigative or law enforcement officer to another investigative or law enforcement officer. Ms. Paule, as an advocate for the PSP, clearly does not fall within the definition of investigative or law enforcement officer as that term is defined in section 5702 of the Wiretap Act nor can the PSP even contend that she falls within that definition.[8]See Footnote 5. Accordingly, we cannot hold that disclosure of the intercepted telephone calls between Dance and his wife by the PSP to Ms. Paule, as the PSP's advocate in a disciplinary hearing, was proper. To the contrary, it was a clear violation of the Wiretap Act and Dance's constitutional right to privacy.
Next, the PSP argues that the PSP acted in good faith reliance on the provisions of the Wiretap Act. The PSP contends that even if its conduct is found to be technically improper, it was not clearly prohibited under the Wiretap Act. The PSP argues that disclosure to Ms. Paule was within its implicit powers pursuant to section 5717 of the Wiretap Act and that the disclosure was essentially limited to the PSP itself.
Pursuant to section 5725(c) of the Wiretap Act, "[i]t is a defense to an action brought pursuant to [the Wiretap Act] that the actor acted in good faith reliance on a court order or the provisions of this chapter." 18 Pa.C.S. § 5725(c). As stated by our Supreme Court in Boettger, "[o]nce it [is] established that the disclosure at issue was not permitted by a court order or the provisions of the Wiretap Act itself, there [is] no reason to reach beyond the words of the statute in order to interpret the good faith defense." Boettger, 534 Pa. at 588, 633 A.2d at 1149. Although Boettger can be distinguished factually from the instant case as advocated by the PSP, we believe the foregoing is applicable herein.
Herein, there was no court order as the district attorney pursuant to section 5704(2)(ii) of the Wiretap Act authorized the interception of the telephone calls. With respect to the PSP's argument that it acted in good faith reliance on the provisions of the Wiretap Act, specifically section 5717, as stated previously herein, the disclosure to Ms. Paule was not authorized by section 5717 of the Wiretap Act. Therefore, the provisions of the Wiretap Act did not permit disclosure to Ms. Paule.
Accordingly, the trial court did not err in denying the PSP's motion for post-trial relief seeking a new trial.
*11 III. CONCLUSION
The April 22, 1998 order of the trial court is reversed and this matter is remanded for a new trial on the issue of damages with respect to the violations of the Wiretap Act as discussed in the foregoing opinion.
The May 20, 1998 order of the trial court is affirmed.

ORDER
NOW, this 27th day of January, 1999, the April 22, 1998, order of the Court of Common Pleas of Erie County, at No. 10735-1995, is reversed, and this matter is remanded for a new trial on the issue of damages with respect to the violations of the Pennsylvania Wiretapping and Electronic Surveillance Control Act as set forth in the foregoing opinion.
Jurisdiction relinquished.

ORDER
NOW, this 27th day of January, 1999, this May 20, 1998, order of the Court of Common Pleas of Erie County, at No. 10735-1995, is affirmed.
NOTES
[1] These appeals were consolidated sua sponte by this court on July 7, 1998.
[2] Due to the procedural nature of this matter, the facts stated in this opinion are taken in part from the trial court's August 12, 1997 opinion disposing of Dance's motion for partial summary judgment on the issue of liability and the PSP's motion for summary judgment.
[3] Sgt. Hample, the criminal investigator, was not trained or certified to personally conduct the electronic eavesdropping.
[4] "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures."
[5] Investigative or law enforcement officer is defined in section 5702 of the Wiretap Act as "[a]ny officer of the United States or of the Commonwealth or political subdivision thereof, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter" 18 Pa.C.S. § 5702.
[6] Section 5708 lists the numerous criminal offenses for which a law enforcement officer may obtain evidence through the authorized interception of a communication.
[7] In reviewing whether the trial court erred in not granting a new trial, this court will not reverse the decision of the trial court in refusing to grant a new trial unless there has been a clear abuse of discretion or an error of law determinative to the outcome of the case. Spang & Co. v. United States Steel Corp., 519 Pa. 14, 545 A.2d 861 (1988).
[8] The PSP concedes that Ms. Paule is not a law enforcement officer.