65 A.3d 301

John P. KAROLY, Jr., Appellant

v.

Michael MANCUSO, Esquire, Assistant District Attorney
and Eric Kerchner, Detective and Christopher Jones,
Esquire, Assistant District Attorney, Appellees.

Supreme Court of Pennsylvania.

Submitted April 22, 2013.

Decided April 24, 2013.

488

Joshua Enders Karoly, Esq., Karoly Lawfirm, L.L.C., for Appellant.

James V. Fareri, Esq., Gerard Joseph Geiger, Esq., Newman, Williams, Mishkin, Corveleyn, Wolfe & Fareri, P.C., for Appellee.

Before: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice SAYLOR.

In this direct appeal involving alleged intentional violations of the Wiretap Act, we consider whether the Commonwealth

Court erred in granting a defense motion for summary judgment.

## I. Background

Pennsylvania's Wiretapping and Electronic Surveillance Control Act (the "Wiretap Act," or the "Act")[1] is designed to protect individual privacy while also giving law enforcement authorities a tool to combat crime. The statute generally prohibits intercepting, using, or disclosing private communications except pursuant to specified procedures. *See, e.g.*, 18 Pa.C.S. § 5708 (pertaining to court orders authorizing interceptions). The Act does, however, allow county correctional facilities to monitor and record inmate phone calls without any specific prior authorization, so long as inmates are notified in writing and anyone calling into the facility is also told that his call may be monitored and recorded. *See* 18 Pa.C.S. § 5704(14). Such facilities may divulge the recordings only as necessary to safeguard the facility, in response to a court order, or in the prosecution or investigation of a crime. *See id.* § 5704(14)(i)(C). As a means of "safeguard[ing] the attorney-client privilege," however, the correctional facilities may not "intercept, record, monitor or divulge any conversation between an inmate and an attorney." *Id.* § 5704(14)(ii).

In addition to its criminal provisions, the Wiretap Act authorizes civil sanctions when its restrictions are intentionally violated. In particular, the Act creates a private cause of action as follows:

§ 5726. Action for removal from office or employment

(a) Cause of action.—Any aggrieved person shall have the right to bring an action in Commonwealth Court against any investigative or law enforcement officer, public official or public employee seeking the officer's, official's or employee's removal from office or employment on the grounds that the officer, official or employee has intentionally violated the provisions of this chapter. If the court shall conclude that such officer, official or employee has in fact intentionally

1. Act of Oct. 4, 1978, P.L. 831, No. 164 (as amended, 18 Pa.C.S. §§ 5701–5782).

violated the provisions of this chapter, the court shall order the dismissal or removal from office of said officer, official or employee.

**Defense.**—It is a defense to an action brought pursuant to subsection (a) that the actor acted in good faith reliance on a court order or the provisions of this chapter.

18 Pa.C.S. § 5726.

In 2005, Monroe County Detective Eric Kerchner and First Assistant District Attorney Michael Mancuso (Appellees) were investigating and prosecuting Dennis Slayton for theft and drug-related offenses, as well as his paramour Jill Goldstein in connection with the drug offenses. Appellant John P. Karoly, Jr., Esq., was acting as Slayton's attorney during this time. Appellant also represented Goldstein in June 2005 at her preliminary hearing, at which Detective Kerchner testified. On October 3, 2005, Goldstein appeared at a bail revocation hearing represented by Eric Dowdle, Esq. At the conclusion, bail was revoked and Goldstein was placed in custody at the Monroe County Correctional Facility (the "MCCF"). The next day, October 4, 2005, Goldstein called Slayton from the jail. During the conversation, Appellant, who was with Slayton, began speaking with Goldstein. The MCCF recorded the conversation.

During its ongoing criminal investigation, the Monroe County district attorney's office formed a belief that Goldstein was communicating from the jail with Slayton, and that obtaining these conversations could aid the investigation. Accordingly, it applied to the common pleas court for an order instructing the MCCF to disclose Goldstein's recorded telephone conversations. On October 14, 2005, the court issued an order directing the MCCF to furnish such recordings. The order stated that the disclosure application and the order itself were to remain sealed. Thus, it directed the MCCF not to reveal the existence of either document.

Based on the order, Detective Kerchner obtained recordings from the MCCF, which included the October 4th conversation between Slayton, Goldstein, and Appellant. The detective played these tapes for members of the district attorney's

office. After hearing the tapes, ADA Mancuso filed, in the criminal case against Slayton, a Motion to Compel and Disqualify Counsel ("Motion to Disqualify"), requesting that Appellant be disqualified from further representing Slayton. The request was predicated on an alleged conflict of interest, as well as Appellant's alleged refusal to tell the authorities where Slayton was hiding.[2] The motion also requested that Appellant be compelled to furnish any information he had concerning Slayton's whereabouts. Its averments included an excerpt of a transcript of the October 4th telephone call, in which Appellant discusses the difficulties that might attend his simultaneous representation of Goldstein and Slayton. In the excerpt, Appellant eventually explains to Goldstein that he does not wish to be disqualified due to a perception that he is representing both individuals, and states that "I can direct your case through Eric while I'm doing [Slayton's], okay?" *See* Motion to Disqualify, at ¶ 8, *reproduced* in R.R. 43–44. The Commonwealth's brief in support of its motion also recited the same portion of the conversation. *See* R.R. at 55. Because the motion and brief were not filed under seal, they became publicly accessible. Appellees allegedly faxed copies of the documents to the *Morning Call* newspaper, which published the discussion between Goldstein and Appellant.

Appellant initiated the present litigation in December 2005 by filing a Complaint for Removal from Public Office or Employment, directed to the Commonwealth Court's original jurisdiction. After preliminary objections were sustained in part, Appellant filed an amended complaint in September 2006.[3] In the interim, Appellant deposed Appellees Kerchner and Mancuso.

**2.** A bench warrant for Slayton's arrest was issued on October 12, 2005, when he failed to appear in court as required. The Commonwealth alleged in the motion that Appellant had become an accomplice in aiding Slayton to remain at large. It also averred that a conflict of interest arose that would jeopardize any future conviction of Slayton because Appellant was acquiring some of Slayton's properties and had a financial interest beyond that of an ordinary attorney's fee in helping Slayton remain hidden from authorities. *See* Motion to Disqualify at ¶¶ 22–25, *reproduced* in R.R. 46–47.

**3.** Although the amended complaint named Assistant District Attorney Christopher Jones, Esq., as a defendant, summary judgment was even-

In the amended complaint, Appellant alleged that Appellees committed multiple violations of the Wiretap Act. Most notably, Appellant contended that: ADA Mancuso violated Section 5703(2) of the Act, *see* 18 Pa.C.S. § 5703(2) (generally making it a felony to divulge to another person the contents of any intercepted communication, except as otherwise provided in the Act), by disclosing the conversation between Appellant and Goldstein when he included it in legal filings that were not placed under seal; and ADA Mancuso and Detective Kerchner conspired to transmit such filings to the press. On the basis of this conduct, Appellant asserted that Appellees intentionally violated the statute and, as such, should be removed from their employment pursuant to Section 5726.

After the submission of additional pleadings and a period of dormancy, the parties filed cross-motions for summary judgment in late 2011. In their brief in support of summary judgment, Appellees argued that the use and disclosure of recorded inmate conversations are specifically authorized by Section 5704(14), *see Commonwealth v. Baumhammers,* 599 Pa. 1, 33–34, 960 A.2d 59, 79 (2008), as well as Section 5717, which pertains to the use of intercepted communications by law enforcement personnel in furtherance of their official duties. In this regard, Appellees contended that the October 14th order permitted the disclosure of the conversation between Appellant and Goldstein to the district attorney's office, and that Appellees used such information in the course of their official duties, thus complying with Section 5717. Appellees also emphasized that removal from employment is a drastic remedy and that the Commonwealth Court has never granted such relief under the Wiretap Act.

In his brief in opposition to Appellees' motion for summary judgment, Appellant asserted, *inter alia,* that, because the common pleas court sealed the October 14th disclosure order, under Section 5714(b) of the Act any recording or evidence resulting from an intercept obtained pursuant to the order

tually entered in favor of ADA Jones at Appellant's request. Accordingly, only the allegations against Detective Kerchner and ADA Mancuso are presently at issue.

was also sealed; and that a finding of good faith reliance on the Wiretap Act was precluded by Appellee's multiple, flagrant, and repeated violations of the Act, including the public filing of the Motion to Disqualify and supporting brief, as well as the transmittal to the press of one or both of these items. He emphasized that such disclosure to the public exceeded the permissible use of the conversation for law enforcement purposes. Additionally, Appellant argued that his conversation with Goldstein was protected by the attorney-client privilege under the exception set forth at Section 5704(14)(ii), which forbids the interception or use of "any conversation between an inmate and an attorney." 18 Pa.C.S. § 5704(14)(ii). He reasoned, in this regard, that he was acting as Goldstein's attorney at the time of the call, and that even if the court found to the contrary, the conversation was still privileged because, as Appellees were aware, Appellant had previously represented Goldstein's in the matter for which she was detained—namely, at her June 2005 preliminary hearing. In support of this latter contention, Appellant referenced *In re Investigating Grand Jury (Appeal of Stretton)*, 887 A.2d 257 (Pa.Super.2005), for the position that the attorney-client privilege extends to conversations between an attorney and his former client where the parties discuss the case in which the attorney provided representation.

In an unpublished, single judge order and memorandum, the Commonwealth Court granted Appellees' motion, denied Appellant's motion, and entered judgment in favor of Appellees. Addressing Appellant's suggestion predicated upon Section 5714(b), the court developed that that provision only applies to communications that are intercepted and recorded in the first instance pursuant to a court order. *See* 18 Pa.C.S. § 5712 (providing specifications for such orders). Since, under Section 5704(14), a court order is not required to record inmate conversations, *see* 18 Pa.C.S. § 5704 (preamble), the court determined that Section 5714(b) was not intended to apply to the interception of Goldstein's phone call. *See Karoly v. Mancuso et al.*, No. 622 M.D. 2005, *slip op.* at 12 (Pa. Cmwlth. Apr. 3, 2012).

As for the Section 5704(14)(ii) exception relating to the attorney-client privilege, the court held that such provision was inapplicable, since Goldstein was not represented by Appellant at the time of the call, as evidenced by the fact that a different attorney handled the bail revocation hearing the previous day, and by Appellant's statement in the call that he could not represent Goldstein. The court suggested that the provision's reference to "an attorney" should not be read to mean any attorney, as that subsection's express purpose is to "safeguard the attorney-client privilege." *Karoly*, No. 622 M.D. 2005, *slip op.* at 14–15 (quoting 18 Pa.C.S. § 5704(14)(ii) and citing *Chimenti v. Dep't of Corr.*, 720 A.2d 205, 213 (Pa.Cmwlth.1998) ("All conversations are subject to recording or monitoring except conversations between an inmate and his attorney.")). Notably, the court did not address Appellant's alternative argument relating to the confidentiality of conversations with former clients, and instead framed its disposition by reasoning that "there is no real factual dispute that Mancuso and Kerchner could have believed, in good faith, that the conversation was not privileged." *Id.* at 15.[4]

The Commonwealth Court additionally rejected Appellant's argument that, because the conversation was sealed pursuant to the October 14th disclosure order, Appellees violated the Act by using or disclosing the conversation obtained in connection with that order. The court found that the order's plain language, which authorized the MCCF to provide the recordings of the phone calls, states only that the order and the underlying application are to remain under seal, but is silent regarding the disclosure of any recordings obtained from the jail. *See id.* at 13.

Finally, the Commonwealth Court concluded that the use of the conversation by the Commonwealth as a basis for its Motion to Disqualify and the inclusion of the conversation in

4. In a footnote, the court mischaracterized Appellant's alternative argument as alleging that Appellant was representing Goldstein in other, unrelated matters. It also held that Slayton's presence during Appellant's conversation with Goldstein demonstrated that neither person had an expectation that the conversation would remain private. *See id.* at 15 n. 28.

the supporting brief were not improper under Section 5717. *See* 18 Pa.C.S. § 5717 (pertaining to, *inter alia,* the investigative disclosure or use of the contents of wire, electronic, or oral communications). The court expressed that, although a factual dispute remained regarding whether Appellees had transmitted these documents to the *Morning Call,* such issue was not material to the question of whether Appellees violated the Wiretap Act. The court specified, in this respect, that even if Appellees had distributed the documents to the newspaper, such transmittal occurred after the documents had become matters of public record through being filed in the court. *See Karoly,* No. 622 M.D. 2005, *slip op.* at 16.[5]

Appellant advances arguments that largely mirror his contentions before the Commonwealth Court. He asserts that the violations of the Wiretap Act by Appellees were not based on good-faith reliance on the Act's provisions, but reflect the animus subsisting between the parties. Appellant renews his argument that all materials obtained pursuant to the October 14th order were to remain under seal until the common pleas court directed otherwise, and submits that a contrary interpretation would lead to an absurd result whereby a court order allowing intercepted communications to be divulged to the police must be kept secret, while the contents of those communications may be publicly disclosed. Appellant states that the Commonwealth Court erred in endorsing such reasoning since it obviates the Wiretap Act's overriding purpose of protecting privacy. In this regard, Appellant stresses that the Act's provisions are to be strictly construed, *see* Brief for Appellant, at 16 (quoting *Kopko v. Miller,* 586 Pa. 170, 180, 892 A.2d 766, 772 (2006), and *Commonwealth v. Hashem,* 526 Pa. 199, 206, 584 A.2d 1378, 1382 (1991)), and develops that, under a strict interpretation of Sections 5714(b) and 5717, the

5. In reaching this disposition, the Commonwealth Court did not consider that distribution to the media involves disclosure beyond the mere filing of a document with the clerk of courts, nor did it assess whether the unsealed filing of the documents was permissible in the first instance, in view of the Act's independent limitations on the disclosure (as opposed to use) of intercepted communications and in light of its policy relating to the protection of individual privacy. These topics are discussed below.

public filing of the Motion to Disqualify and supporting brief were improper. Further, Appellant takes issue with Appellees' purported understanding that the non-disclosure aspect of the October 14th order was only directed to the jail, and not to members of the district attorney's office—again referencing strict-construction precepts. Appellant continues that because Appellees' violations of the Act were willful, he is entitled to the relief he seeks: an order removing Appellees from employment.[6]

In response, Appellees offer generally that the Act serves the dual purposes of protecting privacy and giving law enforcement an investigative tool. *See* Brief for Appellees, at 10 (citing *Boettger v. Loverro*, 526 Pa. 510, 519–20, 587 A.2d 712, 717 (1991)). They maintain that one goal of the Act's investigative function is to conceal the investigation from those being investigated, and that Appellees understood the sealing of the October 14th order as accomplishing that objective. They state that there was no seal in place that prohibited their conduct.

Appellees also highlight that the Commonwealth Court was correct in observing that the interception by the prison was accomplished, not pursuant to Section 5714, but under Section 5704(14), which indicates that the contents of the communications may be divulged to authorities "in the prosecution or investigation of any crime." 18 Pa.C.S. 5704(14)(i)(C); *see* Brief for Appellees, at 15 (citing *Baumhammers*, 599 Pa. at 34, 960 A.2d at 79). They reason that their use and disclosure of the conversation between Appellant and Goldstein was permitted under Section 5717 because all of their actions fell within their official duties, *see* 18 Pa.C.S. § 5717(a), (a.1) (set

6. Appellant also advances other contentions that lack arguable merit. For example, he forwards a claim based on Section 5708, which relates to interception-authorization orders issued by a Superior Court judge, *see* 18 Pa.C.S. § 5708, as well as a contention that ADA Mancuso violated Section 5719 by disclosing the existence of the October 14th order in the Commonwealth's brief in support of its motion for summary judgment. Section 5719, however, pertains to the disclosure of "an order authorizing interception" of communications, 18 Pa.C.S. § 5719, whereas the October 14th order only required the MCCF to provide the Commonwealth with previously-recorded communications.

forth below), including their attempt to disqualify Appellant, which, they assert, was undertaken in furtherance of their prosecution of Slayton, since Slayton was a fugitive as of October 12, 2005, and there was evidence that Appellant was helping Slayton remain hidden.

Appellees additionally maintain that the only time Detective Kerchner has ever sent a document to a news reporter was after the district attorney instructed him to do so and after the document had become a matter of public record by having been filed with the court. Appellees continue that, in all events, ADA Mancuso did not transmit the brief to the press. As a general proposition, Appellees argue that they are shielded by the good faith defense in Section 5726(b), since they proceeded in good faith reliance upon the provisions of the Wiretap Act and the October 14th order.

## II. Discussion

A motion for summary judgment will only be granted if there is no genuine issue concerning any material fact, and the moving party is entitled to judgment as a matter of law. *See* Pa.R.C.P. 1035.2; *Wilson v. El–Daief,* 600 Pa. 161, 170, 964 A.2d 354, 359 (2009). An appellate court may reverse an order granting summary judgment where there is an error of law or an abuse of discretion. *See Fine v. Checcio,* 582 Pa. 253, 265 n. 3, 870 A.2d 850, 857 n. 3 (2005). Because the question of whether a genuine issue of material fact exists is one of law, appellate review is de novo. *See Buffalo Twp. v. Jones,* 571 Pa. 637, 644 n. 4, 813 A.2d 659, 664 n. 4 (2002). In undertaking such review, the record is viewed in the light most favorable to the non-moving party (here, Appellant), and all doubts as to whether a genuine issue exists are resolved against the moving party. *See Basile v. H & R Block, Inc.,* 563 Pa. 359, 365, 761 A.2d 1115, 1118 (2000).

As set forth above, under Section 5726(a) of the Wiretap Act an aggrieved person may bring an action to remove a law enforcement officer or other public official from his or her employment based on proof that the individual "intentionally" violated the provisions of the Act. 18 Pa.C.S. § 5726(a). Such

relief is unavailable, however, where the defendant "acted in good faith reliance on a court order or the provisions of" the Act. *Id.* § 5726(b).[7] This appeal involves whether sufficient evidence of an intentional violation of the Wiretap Act existed to survive a defense motion for summary judgment. As set forth below, we find that the Commonwealth Court correctly disposed of Appellant's claim under Section 5714(b), but erred in its analysis of the strictures imposed by Section 5717 of the Act, and in its evaluation of the Act's protections directed to attorney-client confidentiality.

## A. Section 5714(b)

■ We agree with the Commonwealth Court that the restrictions contained in Section 5714(b) are not implicated by the underlying events. When read in the context of the Act as a whole, that section's reference to "the order," relates to an order allowing law enforcement officers to intercept communications, as authorized in portions of the Act beginning at Section 5708. *See* 18 Pa.C.S. § 5708 (pertaining to orders authorizing the interception of wire, electronic, or oral communications). The interception here was accomplished by the prison according to its operational policy, as permitted by Section 5704(14). This occurred, moreover, independent of Appellees' actions in seeking to retrieve the recording or in obtaining an order allowing them to acquire its contents.

## B. Use and Disclosure

Having acquired the intercepted communication, however, Appellees were subject to independent statutory limitations on

7. The dissent posits that a violation must be, not only intentional, but "egregious" in order to implicate the Act's removal provision. Dissenting Opinion, at 510, 65 A.3d at 316. Such an alteration, however, would be contrary to the established precept that it is improper for this Court to supply legislative omissions. *See Commonwealth v. Shafer,* 414 Pa. 613, 621, 202 A.2d 308, 312 (1964). In any event, as reflected above, the good-faith-defense provision affords substantial protection to an official who has otherwise engaged in an intentional violation. Indeed, arguably at least, a bad-faith intentional violation would meet the dissent's vision of an "egregiousness" requirement.

its use and disclosure. Both use and disclosure are closely cabined by the Act, as set forth in Section 5717:

(a) **Law enforcement personnel.**—Any investigative or law enforcement officer who, under subsection (a.1) or (b), has obtained knowledge of the contents of any wire, electronic or oral communication, or evidence derived therefrom, *may disclose such contents or evidence to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.*

(a.1) **use of information.**—Any investigative or law enforcement officer who, by any means authorized by this subchapter, has obtained knowledge of the contents of any wire, electronic or oral communication or evidence derived therefrom *may use such contents or evidence to the extent such use is appropriate to the proper performance of his official duties.*

(b) **Evidence.**—Any person who by any means authorized by this chapter, has obtained knowledge of the contents of any wire, electronic or oral communication, or evidence derived therefrom, may disclose such contents or evidence to an investigative or law enforcement officer and may disclose such contents or evidence while giving testimony under oath or affirmation in any criminal proceeding in any court of this Commonwealth or of another state or of the United States or before any state or Federal grand jury or investigating grand jury.

18 Pa.C.S. § 5717 (emphasis added).[8]

Subsection 5717(a.1) restricts the use that an investigative or law enforcement officer may make of communications obtained "by any means authorized by this subchapter," including Section 5704. An officer may only use intercepted communications as necessary "to the proper performance of his official duties." 18 Pa.C.S. § 5717(a.1). Likewise, subsection 5717(a) provides that information obtained under subsection

8. Section 5717 was recently amended by the Act of October 25, 2012, No. 202, Section 7. The revisions are not relevant to this appeal.

(a.1) or (b) may only be disclosed to other investigative or law enforcement officers, and only to the extent that such disclosure is appropriate to the official duties of the officer making or receiving the disclosure. *See* 18 Pa.C.S. § 5717(a).[9]

▇ The close observance of these statutory restrictions is especially important where private conversations are overheard by governmental authorities. This Court has expressed that the Wiretap Act is to be strictly construed to protect individual privacy rights. *See Kopko,* 586 Pa. at 180, 892 A.2d at 772; *Commonwealth v. Spangler,* 570 Pa. 226, 232, 809 A.2d 234, 237 (2002); *Boettger v. Miklich,* 534 Pa. 581, 586, 633 A.2d 1146, 1148 (1993) ("A statute, such as the [Wiretap Act], which is in derogation of a constitutional right, the right of privacy, must be strictly construed."); *Hashem,* 526 Pa. at 206, 584 A.2d at 1382 ("No violations of any provisions of the Act will be countenanced, nor will the failure of prosecutors to diligently follow the strict requirements of the Act be lightly overlooked." (emphasis removed)). It is against this background that courts should assess whether investigative and law enforcement authorities have complied with the limitations imposed by the Act, including the limitations on use and disclosure appearing in Section 5717.

▇ There is little doubt Detective Kerchner properly used the tapes of the intercepted conversation by listening to them and playing them for prosecuting attorneys in the Monroe County District Attorney's office. This conduct was consistent with his investigative function and constituted a "disclosure ... to another investigative or law enforcement officer" as allowed under Section 5717(a). Detective Kerchner was aware that Slayton was considered a fugitive at that juncture, and hence, any information concerning Slayton's location—and by extension, the identity of anyone who might know Slayton's location—was relevant to his investiga-

9. The references in Section 5717(a) and (a.1) to "[a]ny investigative or law enforcement officer" subsumes prosecuting attorneys. *See* 18 Pa.C.S. § 5702 (defining "investigative or law enforcement officer" to include prosecuting attorneys).

tion and to the Commonwealth's case.[10]   ADA Mancuso's subsequent use of the conversation in an effort to have Appellant disqualified from further representing Slayton and to compel him to reveal Slayton's whereabouts was likewise within the proper performance of his duties.

Disclosure to the public of the conversation between Appellant and Goldstein, however, is a separate matter. As Appellees acknowledged during their depositions, the fact that the Motion to Disqualify and supporting brief were not filed under seal made their contents a matter of public record—and, as such, they were transmitted to the press. *See* N.T., Aug. 4, 2006, at 83–84, *reproduced in* R.R. 91 (testimony of ADA Mancuso); N.T., July 27, 2006, at 140–41, *reproduced in* R.R. 220 (testimony of Detective Kerchner). The Commonwealth Court did not discern any impropriety in the dissemination to the media, reasoning that, by that time the documents had been made public through their unsealed filing in the clerk of courts' office. This reasoning was error.

Section 5717 applies to private communications obtained "by any means authorized by this subchapter"—that is, Subchapter B of the Act, which includes Section 5704. Hence, that section's restrictions on both use and disclosure applied to the conversation between Appellant and Goldstein irrespective of whether the October 14th order so specified. As discussed, Section 5717(a) only expressly allows officials to disclose intercepted communications to other investigative or law enforcement officers, and only to the extent such disclosure is appropriate to the proper performance of official duties. *See, e.g., Miklich,* 534 Pa. at 587–88, 633 A.2d at 1149 (finding that, because Section 5717(a) only allows disclosure to investigative and law enforcement officers as defined in Section 5702 of the Act, it prohibits distribution to taxing authorities); *see also Dance v. Pa. State Police,* 726 A.2d 4, 8–9 (Pa.Cmwlth.1999)

10. Appellant maintains that, because the intercepted conversation occurred before the bench warrant for Slayton's arrest was issued, it could not have related to Slayton's fugitive status. *See* Brief for Appellant, at 13. This contention overlooks the possibility that information from a pre-warrant conversation could help authorities determine where Slayton was located in the post-warrant timeframe.

(finding that, where a private conversation was intercepted to investigate possible criminal conduct by a police officer, its subsequent disclosure to a police internal affairs officer violated the Act).[11]

We do not agree that distribution to the media can be harmonized with the Act's restrictions on disclosure, since it constitutes a level of public disclosure above and beyond that which occurs when documents are filed with the clerk of courts. *Cf. Bochetto v. Gibson,* 580 Pa. 245, 251, 860 A.2d 67, 71 (2004) (describing an attorney's act of transmitting a civil complaint to the press as "republishing" the complaint, and holding that such action was not shielded from liability under the judicial privilege). Because members of the press are not investigative or law enforcement officers as defined in the Wiretap Act, any dissemination of the intercepted communications to the media by either Appellee would have been contrary to Section 5717(a).[12]

Nor is it apparent why the Motion to Disqualify and supporting brief could not have been filed under seal in the first instance, or how filing these items under seal might have impeded their effective law-enforcement use. Indeed, the plainly confidential nature of the conversation itself would

**11.** Both *Miklich* and *Dance* applied subsection (a) as it was originally enacted in 1978, before it was divided into (a) and (a.1), separately governing disclosure and use. For present purposes, the original version of subsection (a) was substantively identical to the present (a) and (a.1) taken collectively. *See* 18 Pa.C.S. § 5717, Historical and Statutory Notes; *Miklich,* 534 Pa. at 587, 633 A.2d at 1149 (quoting the 1978 version).

**12.** The dissenting opinion appears to overlook entirely Appellant's allegation that Appellees conspired to transmit protected information to the press, instead concentrating only on the disclosure in a court document. With this limited context, the dissent does not specify whether it agrees with the Commonwealth Court's position that, once any sort of public disclosure is made legitimately, the Wiretap Act offers no further protections relative to wider disclosures. For our part, we find no support in the statute for according such immunity relative to the disclosures any wider than those necessary to use.

Notably, since the dissent omits any reference to the alleged dissemination of protected information to a newspaper reporter, it also does not reveal its position concerning whether this sort of disclosure could rise to the kind of "egregious and purposeful violation[ ]" which the dissent

appear to have made it apparent that their unsealed filing could lead to a broad public disclosure that would be inconsistent with the limitations appearing in Section 5717(a) and with the Act's broad objectives relating to the protection of privacy. We acknowledge that Section 5717(a.1) provides leeway for the official use of intercepted communications that is somewhat broader than its express allowance regarding disclosure. For example, placing relevant investigative information before a court of law undoubtedly constitutes a permitted law-enforcement use, although the court may not be comprised of "investigative or law enforcement officers" under Section 5717(a). Notably, however, the fact that a use (filing with a court) may entail an ancillary disclosure (to the court and its staff) that exceeds the literal terms of Section 5717(a) does not signify that all limits on disclosure are thereby eliminated for that use. To the contrary, any such use should be as consistent as is practicable with Section 5717(a)'s narrow restrictions on disclosure—that is, the disclosure should not exceed that which is essential to the effective use.

In the present context, the most obvious manner of accomplishing the appropriate investigative and law-enforcement use of the intercepted conversation, as suggested above, would have been to file the motion and brief under seal.[13] The failure to do so, as all parties acknowledge, caused the intercepted conversation to become a matter of public record. Unfortunately, the Commonwealth Court focused primarily on the October 14th order and, as such, it did not evaluate whether the unsealed filing of the motion and brief was

contemplates as actionable. Dissenting Opinion, at 509, 65 A.3d at 316.

13. According to the dissent, because the Wiretap Act does not specifically require protected information to be filed under seal, the Legislature did not intend any such requirement. See Dissenting Opinion, at 509, 65 A.3d at 316. In fact, the "use" provision is phrased in very general terms ("[a]ny investigative or law enforcement officer ... may use [protected] contents or evidence to the extent such use is appropriate to the proper performance of his official duties," 18 Pa.C.S. § 5717(a.1)). In this regard, the Legislature did not elaborate on permissible manners of use in any context whatsoever. It did, however, closely limit "disclosure," see 18 Pa.C.S. § 5717(a), and the implication is thus very clear from the statute that "uses" entailing disclosures must be undertaken with great care.

permissible under Section 5717.[14]

■ Because this issue, as well as an appropriate treatment of the alleged disclosure to the press, are material to the outcome, we find that the Commonwealth Court improperly granted Appellees' motion for summary judgment. Thus, the matter will be remanded for hearings on these questions, the question of intent, and/or on whether Appellees acted in good-faith reliance on the Act.[15]

## C. Attorney–Client Privilege

On remand, the Commonwealth Court should also re-assess its position relative to the claim that Appellees violated the Wiretap Act by revealing confidential attorney-client discussions protected under Section 5704(14)(ii). Before that court, Appellant argued that Appellees were not entitled to use the

---

**14.** Before the Commonwealth Court, although Appellant focused largely on the fact that the October 14th order was sealed, he separately asserted that Appellees' actions were improper under Section 5717. *See* Amended Complaint at ¶ 32, *reproduced in* R.R. 11; Petitioner's Brief in Opposition to Respondents' Motion for Summary Judgment, at 15.

**15.** The dissent repeatedly observes that the Commonwealth Court "made no finding of an intentional violation." Dissenting Opinion, at 511, 65 A.3d at 317. Of course, it could not, since it disposed of Appellant's petition summarily, without conducting a factual hearing. Furthermore, the Commonwealth Court never considered the question of scienter, since, as we have explained, it found that no violation occurred in the first instance. The dissent's approach of taking the absence of a particular finding as proof that the opposite is true is simply untenable. *See id.* Similarly, to the degree the dissent makes factual assertions on contested matters, we observe that this sort of speculation and/or appellate-level fact finding is inappropriate. *See Commonwealth ex rel. Davenport v. Montgomery Cnty. Children & Youth Servs.*, 501 Pa. 472, 476, 462 A.2d 221, 224 (1983); *see also Commonwealth v. Bomar*, 573 Pa. 426, 465, 826 A.2d 831, 854 (2003) (referencing the "danger" of an appellate court "engaging in appellate fact-finding").

We have no quarrel with the dissent's observation that a finding of an "intentional" violation is a prerequisite to an assessment of good faith as a defense under Section 5726(b) (although, factually, it seems likely that there will be substantial overlap between the two determinations). *See* Dissenting Opinion, at 511, 65 A.3d at 317. Our difference is with the dissent's position that alleged intentional public disclosures of protected information in the form of open court filings and dissemina-

excerpt because Section 5704(14)(ii) states that county correctional facilities may not "intercept, record, monitor or divulge any conversation between an inmate and an attorney." The court reasoned that, in light of the *dictum* contained in *Chimenti*—stating that identical language in Section 5704(13)(ii) signifies that only conversations between an inmate and "his" attorney are protected—Appellees "could have believed, in good faith, that the conversation was not privileged," *Karoly*, No. 622 M.D. 2005, *slip op.* at 15, since they knew that a different attorney had represented Goldstein at the previous day's hearing. Because a motion for summary judgment should only be granted when there is no genuine issue of fact material to the outcome, whether the defendants "could have" had a good-faith defense under Section 5726(b) is not the appropriate inquiry. The question is whether they did, in fact, rely in good faith "on a court order or the provisions of" the Act. 18 Pa.C.S. § 5726(b). Such reliance cannot be gleaned from the present record. In view of the absence of any legal analysis concerning the Wiretap Act's protections in this arena, moreover, we find it appropriate to supply substantive guidance, although we recognize that the eventual disposition may turn on the issue of good-faith reliance.

Subsection 5704(14)(ii) shields any "conversation between an inmate and an attorney" from being intercepted or divulged. *See* 18 Pa.C.S. § 5704(14)(ii).[16] We may assume that the General Assembly was aware of the phrase, "his or her attorney," but intentionally chose instead to utilize the phrase, "an attorney." *See generally* 1 Pa.C.S. § 1921(b) (a statute's clear language may not be disregarded to pursue its "spirit"). In this regard, even if we allow for a judicial gloss whereby only attorney-client conversations that are otherwise confidential come under Section 5704(14)(ii)'s protection, the statutory restriction on intercepting conversations with "an

tion to the press do not raise material factual issues concerning intent and/or good faith.

16. The provision directly restricts the actions of county correctional facilities. Nevertheless, under the Wiretap Act, any otherwise privileged communication retains its privileged character regardless of whether it was intercepted in accordance with, or in violation of, the provisions of the Act. *See* 18 Pa.C.S. § 5711.

attorney," being more broadly prophylactic, accomplishes that purpose better than a restriction framed in terms of "his or her attorney." For example, if an inmate seeking legal assistance discusses his or her case with an attorney, such preliminary conversations are confidential although no lawyer-client relationship has yet been formed. *See* Pa.R.P.C. 1.18(b) (governing the confidentiality of information learned in consultations with prospective clients); *see also Surface v. Bentz*, 228 Pa. 610, 617, 77 A. 922, 923 (1910) (explaining, in *dicta*, that, preliminary statements made by a prospective client are subject to the attorney-client privilege since the client cannot predict whether the lawyer will accept his case (quoting 4 WIGMORE, EVIDENCE § 2304)); *cf. Commonwealth v. Mrozek*, 441 Pa.Super. 425, 428, 657 A.2d 997, 998 (Pa.Super.1995) (holding that the attorney-client privilege extends to preliminary statements made to an attorney's secretary with the purpose of seeking legal representation in a criminal matter).[17] This dovetails with the purpose of the rule, which is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981); *see Gillard v. AIG Ins. Co.*, 609 Pa. 65, 70 n. 1, 15 A.3d 44, 47 n. 1 (2011) (citing cases).

■■■ Likewise, conversations with an inmate's former attorney about the case in which representation was provided may be protected by the attorney-client privilege, *see Commonwealth v. Hutchinson*, 290 Pa.Super. 254, 263–64, 434 A.2d 740, 744–45 (1981); *see also In re Investigating Grand Jury (Appeal of Stretton)*, 887 A.2d 257, 260 (Pa.Super.2005) (determining that an attorney-client conversation concerning the criminal case at issue was privileged although the attorney

---

17. Under *Mrozek*, since preliminary conversations with an attorney's secretary about a criminal case are privileged, *a fortiori*, such conversations with the attorney are also privileged. *Accord In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 124 n. 1 (3d Cir.1986) ("The attorney-client privilege protects conversations between prospective clients and counsel as well as communications with retained counsel."); *United States v. Montevecchio*, 645 F.Supp. 497, 499 (W.D.Pa.1986) (same).

had already been replaced)—a circumstance that has particular salience in the present matter because Appellees were aware that Appellant had previously represented Goldstein on the charges that formed the subject of the intercepted (and ultimately published) conversation.[18]   In such cases, as well, the statutory protection covering conversations between an inmate and "an attorney" safeguards the attorney-client privilege.   Thus, to the extent *Chimenti's dictum* may be construed to suggest that only conversations between an inmate and his or her *presently retained* counsel are protected under Section 5704, it is disapproved.

Finally, the Commonwealth Court indicated that, in view of Slayton's presence during Appellant's conversation with Goldstein, "there was no expectation of privacy" in that conversation, "thus nullifying any attorney-client privilege." *Karoly*, No. 622 M.D. 2005, *slip op.* at 15 n. 28; *see supra* note 4. It is not clear that this is true, and the court made its assessment without explanation or citation to legal authority.   It bears noting that Slayton and Goldstein were both criminal defendants with regard to drug charges based on the same underlying events, Appellant was representing Slayton relative to such charges, and either Appellant or Eric Dowdle was representing Goldstein during the relevant timeframe.   Hence, even if Slayton heard the conversation between Appellant and Goldstein, it would not necessarily follow that the privilege was waived since, under the prevailing law of this Commonwealth, the joint-client or common-interest privilege could potentially apply. *See generally In re Condemnation by City of Phila.*, 981 A.2d 391, 396–98 (Pa.Cmwlth.2009); *Commonwealth v. Scarfo*, 416 Pa.Super. 329, 377, 611 A.2d 242, 266 (1992), *superseded by statute on other grounds as stated in Commonwealth v. Buck*, 551 Pa. 184, 189, 709 A.2d 892, 895 (1998); REST. (THIRD) LAW GOVERNING LAWYERS §§ 75–76.   If the question ultimately becomes relevant, whether a privilege existed under any of the above theories should be determined

18.   Whether an attorney's conversations with a former or prospective client about subjects unrelated to the case may be intercepted, used, and/or disclosed is a separate question that is not presently before the Court.

in the first instance by the Commonwealth Court on a developed record.

For the reasons given, the order of the Commonwealth Court is vacated, and the case is remanded for further proceedings consistent with this Opinion. The court is directed to hold hearings as necessary on the issues of intent, good faith, and any other material issues of fact, and to provide particularized and reviewable findings and conclusions when finally determining the merits of Appellant's claims.

Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE, Justice BAER and Justice TODD join the opinion.

Justice EAKIN files a concurring and dissenting opinion in which Justice McCAFFERY joins.

## CONCURRING AND DISSENTING OPINION

Justice EAKIN.

I agree with the majority that the restrictions contained in § 5714(b) are not implicated by the underlying events. I agree Detective Kerchner's disclosure of the recorded conversations to the district attorney's office was proper under § 5717(a), and that ADA Mancuso's use of the conversation to have appellant disqualified was proper under § 5717(a.1). As a general proposition, I agree the "use" permitted under subsection (a.1) is broader than the "disclosure" permitted under subsection (a), and that "any such use should be as consistent as is practicable with Section 5717(a)'s narrow restrictions on disclosure—that is, the disclosure should not exceed that which is essential to the effective use." *See* Majority Op., at 504, 65 A.3d at 312.

This general limiting of disclosure is necessarily aspirational, however, as what is "practicable" is necessarily a subjective term.[1] The consequences for not accomplishing the least possi-

1. The ambiguity in the word is most famously expressed in General Robert E. Lee's orders to General Ewell at the Battle of Gettysburg—

ble disclosure should accordingly reflect some proportionality between act and consequence; only the most serious intentional breach should result in the punitive result of removal from office. We must remember the present matter is not a request for civil damages or suppression of evidence, but a complaint seeking to remove the ADA and police officer from their employment, a drastic and radical remedy. Such a remedy should be reserved for egregious and purposeful violations, not a finding that the use was proper but in hindsight, a better procedure could have lessened the disclosure.

Nothing in the Wiretap Act required ADA Mancuso to file his motion or brief under seal. The legislature obviously knew such material would be used in court documents making it a matter of public record. The legislature also understood how to require a sealed filing, as it provided for sealing of records in other portions of the Act. *See* 18 Pa.C.S. § 5714(b) (sealing of records).[2] As the legislature did not provide for a sealed filing under this section, the failure to request sealing does not comprise an intentional violation. A request to seal might indeed have limited disclosure, but that does not make any other course of action an intentional violation.

The remedy sought here is so far out of line with the empirical motivations behind disclosure that it is disproportionate to the point of being inapplicable. It is not insignificant that the conversations disclosed did not prejudice either accused—the use and resulting disclosure involved protecting their rights to independent counsel and real conflict of interest concerns, a motivation not born of intent to violate the law.

"The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). As a general rule, the best

Ewell was to take Culp's Hill "if practicable" without bringing on a general engagement. As a general engagement had surrounded him for several hours, it is undoubtedly the "if practicable" clause that gave Ewell sanction not to attack the hill, to Lee's great disappointment.

2. As discussed by the majority, the requirements of § 5714(b) are not applicable to this case. Majority Op., at 498–99, 65 A.3d at 309.

indication of the General Assembly's intent in enacting a statute may be found in its plain language. *Martin v. Commonwealth, Department of Transportation, Bureau of Driver Licensing*, 588 Pa. 429, 905 A.2d 438, 443 (2006).

In this regard, "it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include." *Commonwealth v. Rieck Investment Corp.*, 419 Pa. 52, 213 A.2d 277, 282 (1965). Consequently, "[a]s a matter of statutory interpretation, although one is admonished to listen attentively to what a statute says; one must also listen attentively to what it does not say." *Kmonk–Sullivan v. State Farm Mutual Automobile Insurance Co.*, 567 Pa. 514, 788 A.2d 955, 962 (2001) (internal quotations omitted); *see also Commonwealth v. Booth*, 564 Pa. 228, 766 A.2d 843, 846 (2001) ("[A] court may not achieve an acceptable construction of a penal statute by reading into the statute terms that broaden its scope.").

*Commonwealth v. Johnson*, 611 Pa. 381, 26 A.3d 1078, 1090 (2011); *see also* Majority Op., at 506, 65 A.3d at 314 (citing 1 Pa.C.S. § 1921(b)) ("statute's clear language may not be disregarded to pursue its 'spirit' "). Under § 5726, the court must "conclude that such officer, official or employee has *in fact intentionally violated the provisions* of this chapter," 18 Pa. C.S. § 5726(a) (emphasis added), and it is a defense if "the actor acted in good faith reliance on a court order of the provisions of the chapter." *Id.*, § 5726(b). As the Commonwealth Court made no finding of an intentional violation, reviewing the question of good faith is unnecessary. That is, assuming provisions of the statute were violated, there needs to be a finding the violation was intentional before good faith becomes an issue—it is a basic premise of law that until there is proof by the moving party of the facts it alleges, there is no need to reach the issue of a defense. Appellant alleges an intentional violation of the relevant Act—until there is evidence that the disclosure here was intentionally beyond the practicable limits, examining good faith is unnecessary.

The majority also directs the Commonwealth Court to reassess whether appellees revealed confidential attorney-client

discussions. As the conversation at issue was not subject to the attorney-client privilege, discussion of the phrase "an attorney" seems unnecessary in light of the manifest legislative intent. The statutory language reads, in full, *"[s]o as to safeguard the attorney-client privilege,* the county correctional facility shall not intercept, record, monitor or divulge any conversation between an inmate and an attorney." 18 Pa.C.S. § 5704(14)(ii) (emphasis added).

Certainly the legislature did not mean anything said to any attorney is protected—there is no indication the legislature wished to create a new and limitless privilege for all things said to anyone with a law degree. If such was its radical purpose, the legislature would (1) have said so expressly, and (2) not enunciated such a discrete purpose, that of safeguarding the existing privilege. Thus, the appropriate inquiry is whether the conversation between appellant and Goldstein was subject to the attorney-client privilege, which it was not. The Commonwealth Court noted:

> [T]he record clearly reflects that Goldstein was represented by another attorney, Eric Dowdle, during her bail revocation hearing, only a day or two before the conversation at issue and, in the conversation itself, [appellant] repeatedly and clearly states that he cannot represent, or be seen to direct the representation of, Goldstein.

*Karoly v. Mancuso,* No. 622 M.D. 2005, unpublished memorandum at 15 (Pa.Cmwlth. filed April 3, 2012).

Based on appellant's own declarations he was not Goldstein's attorney, the conversation was not subject to the attorney-client privilege. *See In re Investigating Grand Jury,* 887 A.2d 257, 259 (Pa.Super.2005) ("[L]egal matters discussed between an attorney and someone seeking legal advice are privileged unless it is clear that there is no lawyer-client relationship and it is just a casual conversation."). Even if appellant could somehow be considered Goldstein's attorney at that time, it is well established that "[a] communication between attorney and client made in the presence of a third person is not privileged." *In re Estate of Beisgen,* 387 Pa.

425, 128 A.2d 52, 54 (1956) (quoting *In re Estate of Burr*, 381 Pa. 547, 113 A.2d 712, 714 (1955)).[3]

Based on the foregoing, I would affirm the decision of the Commonwealth Court, and therefore am constrained to offer this respectful dissent.

Justice McCAFFERY joins this concurring and dissenting opinion.

3.  The co-defendant or common-interest privilege would not apply here and would therefore not create an exception to the waiver because: (1) as appellant admits in his brief, Slayton and Goldstein are not co-defendants, Brief of Appellant, at 7; and (2) Slayton and Goldstein do not share a common *legal* interest, in that one's innocence will not be of strategic benefit to the other in determining his or her innocence. *See In Re: Condemnation by City of Philadelphia*, 981 A.2d 391, 396–99 (Pa.Cmwlth.2009) ("Evidence M parties supported each other's separate efforts by sharing information and/or legal strategy is *not* evidence that the two shared a common legal interest.") (emphasis in original).