# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason Winig,                :

             Appellant       :

                                    :

            v.                   :       No. 1423 C.D. 2021

                                    :       Argued: November 14, 2022

The Office of the District Attorney    :

of Philadelphia, Lawrence S. Krasner,   :

Esquire, Branwen McNabb, Esquire,     :

Michelle Michelson, Esquire,           :

William Burrows, Esquire and         :

Helen Park, Esquire                  :


BEFORE:     HONORABLE MICHAEL H. WOJCIK, Judge
                   HONORABLE ELLEN CEISLER, Judge (P.)
                   HONORABLE STACY WALLACE, Judge


<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WALLACE                         FILED: February 24, 2023


Jason Winig (Winig) appeals the June 21, 2021 order of the Court of Common Pleas of Philadelphia County (trial court) sustaining the Office of the District Attorney of Philadelphia's, Lawrence S. Krasner's, Branwen McNabb's, Michelle Michelson's, William Burrows's, and Helen Park's (collectively, Prosecutors) preliminary objections (Prosecutors' POs) to Winig's Amended Complaint (Complaint). In Winig's Complaint, he sought damages against Prosecutors for alleged violations of Pennsylvania's Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S. §§ 5701-5782 (Wiretap Act), and an invasion

of privacy claim. In Prosecutors' POs, Prosecutors asserted Winig's claims were barred by prosecutorial and high public official immunity. Additionally, Prosecutors contended Winig's invasion of privacy claim was barred by the statute of limitations.[1] For the following reasons, we affirm the trial court's order.

## BACKGROUND

From January 2011 until August 2019, Winig and Jessica Braverman (Interceptor) were married. Reproduced Record (R.R.) at 21a. During their marriage, Interceptor recorded various conversations between Interceptor and Winig without Winig's knowledge or consent (Recordings). *Id.* In March 2018, Interceptor reported Winig for domestic violence to the Philadelphia Police Department. *Id.* In support of her report, Interceptor provided the Recordings to the police and, ultimately, Prosecutors. *Id.* at 22a. Based on the evidence in the Recordings, Prosecutors authorized Winig's arrest. *Id.* at 22a-23a. Winig's arrest resulted in the case of *Commonwealth v. Winig*, docketed at No. CP-51-0004159-2018, which was ultimately nolle prossed, before the trial court (Criminal Action).

In his Complaint, Winig outlined the various instances in which Prosecutors used or disclosed excerpts from the Recordings between July 2018 and January 2019. They were as follows: Prosecutors referenced and quoted the Recordings during the preliminary hearing in the Criminal Action. R.R. at 24a. Prosecutors referenced and quoted the Recordings in their response to Winig's motion to quash the return of transcript and in the hearing that followed in the Criminal Action. *Id.* Prosecutors referenced and quoted the Recordings in their response to Winig's

---

[1] In its June 21, 2021 order, the trial court dismissed Winig's Complaint on Prosecutors' POs asserting prosecutorial and high public official immunity only, and it did not address Prosecutors' PO regarding the statute of limitations. However, the trial court addressed the statute of limitations in its Pa.R.A.P. 1925(a) Opinion.

motion to compel the surrender of Winig's phone and in the hearing that followed in the Criminal Action. *Id*. Prosecutors referenced and quoted the Recordings in their motion to admit evidence of other acts and in the hearing that followed in the Criminal Action. *Id*. at 25a. Prosecutors referenced and quoted the Recordings in their response to Winig's pretrial motions and in the hearing that followed in the Criminal Action. *Id*.

In April 2019, the trial court issued findings of fact and determined, as a matter of law, that Interceptor's Recordings were created in violation of the Wiretap Act. *Id*. at 26a. The trial court prohibited Prosecutors from using the Recordings as evidence against Winig at the trial in the Criminal Action. *Id*. After the trial court's ruling, Prosecutors withdrew the criminal charges against Winig. *Id*.

After Prosecutors withdrew the criminal charges, Winig filed his Complaint alleging Prosecutors knew or should have known the Recordings were obtained in violation of the Wiretap Act and that their use and disclosure of the contents of the Recordings were in violation of the Wiretap Act. *Id*. Winig asserted Prosecutors were not immune from liability because the Wiretap Act expressly waives sovereign immunity. *Id*. at 23a. Winig claimed that because of Prosecutors' intentional use of the Recordings, he suffered damages including embarrassment, humiliation, injury to his right to privacy, and harm to his reputation. *Id*. Additionally, Winig claimed that Prosecutors' use of the Recordings was an invasion of his right to privacy as Prosecutors "intentionally intruded upon the solitude or seclusion of [Winig, and], his private affairs and concerns" and such intrusion "would be highly offensive to a reasonable person." *Id*. at 29a.

3

In response, Prosecutors filed Prosecutors' POs in the nature of a demurrer asserting Prosecutors were entitled to absolute prosecutorial immunity, high public official immunity, and litigation privilege. R.R. at 39a. Additionally, Prosecutors demurred alleging Winig's Complaint failed to plead sufficient facts to state a cause of action under the Wiretap Act or for invasion of privacy. *Id*. at 40a. Finally, Prosecutors asserted Winig's claim alleging invasion of privacy was barred by the one-year statute of limitations. *Id*. at 41a.

In June 2021, the trial court sustained Prosecutors' POs on the grounds of prosecutorial and high public official immunity and dismissed Winig's Complaint. Trial Ct. Order, June 21, 2021. In its Pa.R.A.P. 1925(a) Opinion, the trial court acknowledged the Wiretap Act waives sovereign immunity for purposes of civil claims, but concluded there is a "significant distinction between sovereign immunity, the subject matter of Section 5725(b) of the Wiretap Act, [18 Pa. C.S. § 5725(b),] and high public official and prosecutorial immunity, a separate and distinct category of immunity." Trial Ct. Opinion, December 21, 2021, at 2. The trial court noted that "[h]igh public official immunity is a 'long-standing category of common law immunity that acts as an absolute bar to protect high public officials from lawsuits arising out of actions taken in the course of their official duties and within the scope of their authority.' *Doe v. Franklin* [*Cnty.*], 174 A.3d 593, 603 (Pa. 2017)." *Id*. at 5. The trial court concluded a plain reading of Section 5725(b) of the Wiretap Act confirms the legislature intended to bar sovereign immunity and did not intend to abrogate high public official or prosecutorial immunity. *Id*.

Additionally, the trial court overruled Winig's POs to Prosecutors' POs concluding that while an affirmative defense is generally to be pled in a new

4

matter, it may be raised in POs where it is established on the face of the complaint. *Id*. The trial court noted that a civil suit alleging invasion of privacy has a one-year statute of limitations. *Id*. The trial court concluded that because Prosecutors used the Recordings in various hearings and filings between July 2018 and January 2019, the latest date Winig's alleged injury would have commenced was January 2019. *Id*. Because Winig did not commence his civil action until June 2020, the trial court determined his invasion of privacy claim was untimely. *Id*. Winig filed this appeal.

## ARGUMENTS ON APPEAL

On appeal, Winig argues the trial court erred in sustaining Prosecutors' POs in the nature of a demurrer based upon prosecutorial and high public official immunity when Section 5725(b) of the Wiretap Act expressly abrogates those immunities. Winig's Br. at 4. Winig contends the trial court erred in limiting the scope of the term sovereign immunity in Section 5725(b) of the Wiretap Act because it rendered the waiver provision meaningless. *Id*. Finally, Winig argues the trial court erred in dismissing his Complaint when facts may have been developed in discovery to establish Prosecutors' conduct was so egregious that they exceeded the scope of their official duties and abused their prosecutorial discretion. *Id*.

In response, Prosecutors argue the trial court correctly concluded absolute prosecutorial immunity and high public official immunity barred Winig from receiving damages under the Wiretap Act. Prosecutors' Br. at 7. Specifically, Prosecutors assert they used the Recordings within the scope of their duties to initiate a criminal case against Winig and litigate pretrial evidentiary issues. *Id*. at 6. Additionally, Prosecutors indicate they had a good faith belief that the

5

Recordings did not violate the Wiretap Act when they used the Recordings in the Criminal Action. *Id.*

## DISCUSSION

Our review of the trial court's orders sustaining Prosecutors' POs and dismissing Winig's Complaint is limited to a determination of whether the trial court abused its discretion or committed an error of law. *In re Est. of Bartol*, 846 A.2d 209 (Pa. Cmwlth. 2004). Where a preliminary objection presents a question of law, such as objections related to issues of immunity and statutory interpretation, the standard of review is *de novo* and the scope of review is plenary. *Russo v. Allegheny Cnty.*, 125 A.3d 113 (Pa. Cmwlth. 2015). In reviewing the preliminary objections, we consider as true "all well[-]pleaded relevant and material facts." *McGriff v. Pa. Bd. of Prob. & Parole*, 809 A.2d 455, 458 (Pa. Cmwlth. 2002). Preliminary objections shall only be sustained "when they are free and clear from doubt." *Id.*

We consider Prosecutors' POs. In Prosecutors' POs, Prosecutors assert demurrers, under Pennsylvania Rule of Civil Procedure 1028(a)(4), Pa.R.Civ.P. 1028(a)(4),[2] arguing Prosecutors are entitled to absolute prosecutorial and high public official immunity from the actions set forth in the Complaint seeking damages for Prosecutors' alleged violations of the Wiretap Act and invasion of privacy.

Under the Wiretap Act, it is unlawful for any person to (1) intentionally *intercept* any wire, electronic, or oral communication; (2) intentionally *disclose* the contents of any wire, electronic, or oral communication, or evidence derived from

---

[2] Rule 1028(a)(4) provides that preliminary objections may be filed by a party to a pleading on the grounds of legal insufficiency of the pleading. Pa.R.Civ.P. 1028(a)(4).

the communication, knowing the information was obtained through an interception; or (3) intentionally *use* the contents of any wire, electronic, or oral communication, or evidence obtained from the communication, knowing or having reason to know, that the information was obtained through an interception. 18 Pa. C.S. § 5703.

The Wiretap Act establishes a civil cause of action for violations of its provisions. Section 5725(a) states

> [a]ny person whose . . . communication is intercepted, *disclosed or used in violation of this chapter* shall have a civil cause of action against any person who intercepts, discloses or uses . . . such communication; and shall be entitled to recover from any such person:
>
> (1) Actual damages, but not less than liquidated damages computed at the rate of $100 a day for each day of violation, or $1,000, whichever is higher.
>
> (2) Punitive damages.
>
> (3) A reasonable attorney's fee and other litigation costs reasonably incurred.

18 Pa. C.S. § 5725(a) (emphasis added). Notably, "[i]t is a defense to a[ civil action brought under the Wiretap Act] that the actor acted in good faith reliance on a court order or the provisions of this chapter." 18 Pa. C.S. § 5725(c).

The Wiretap Act also establishes a separate cause of action for removal from office under Section 5726. 18 Pa. C.S. § 5726. Section 5726(a) provides that

> [a]ny aggrieved person shall have the right to bring an action in Commonwealth Court against any investigative or law enforcement officer, public official or public employee seeking the officer's, official's or employee's removal from office or employment on the grounds that the officer, official or employee has intentionally violated the provisions of this chapter. If the court shall conclude that such officer, official or employee has in fact intentionally violated the

7

provisions of this chapter, the court shall order the dismissal or removal from office of said officer, official or employee.

*Id*. Section 5726(b) creates a defense to an action brought under the Wiretap Act if the actor acted "in good faith reliance on a court order or the provisions of this chapter." *Id*.

The Wiretap Act defines "person" as "[a]ny employee, or agent of the United States or any state or political subdivision thereof, and any individual, partnership, association, joint stock company, trust or corporation." 18 Pa. C.S. § 5702. The Wiretap Act separately defines "investigative or law enforcement officer" as:

> Any officer of the United States, of another state or political subdivision thereof or of the Commonwealth or political subdivision thereof, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter or an equivalent crime in another jurisdiction, *and any attorney authorized by law to prosecute or participate in the prosecution of such offense*.

*Id*. (emphasis added).

"Oral communication" is any "oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation." *Id*. An "intercept" is:

> Aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device. The term shall include the point at which the contents of the communication are monitored by investigative or law enforcement officers. The term shall not include the acquisition of the contents of a communication made through any electronic, mechanical or other device or telephone instrument to an investigative or law enforcement officer, or between a person and an investigative or law enforcement officer, where the investigative or law enforcement officer poses as an actual person who is the intended recipient of the communication, provided that the Attorney General, a deputy attorney general designated in writing by the Attorney General, a district attorney or an

8

assistant district attorney designated in writing by a district attorney of the county wherein the investigative or law enforcement officer is to receive or make the communication has reviewed the facts and is satisfied that the communication involves suspected criminal activities and has given prior approval for the communication.

*Id.*

In Section 5717, the Wiretap Act addresses law enforcement officers' use and disclosure of communications under the Wiretap Act. Section 5717 states:

 (a) **Law enforcement personnel.--**Any investigative or law enforcement officer who, under subsection (a.1), (b), (b.1) or (c), has obtained knowledge of the contents of any wire, electronic or oral communication, or evidence derived therefrom, *may disclose such contents or evidence to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure*.

(a.1) **Use of information.--**Any investigative or law enforcement officer who, by any means authorized by this subchapter, has obtained knowledge of the contents of any wire, electronic or oral communication or evidence derived therefrom *may use such contents or evidence to the extent such use is appropriate to the proper performance of his official duties.*

(b) **Evidence.--**Any person who by any means authorized by this chapter, has obtained knowledge of the contents of any wire, electronic or oral communication, or evidence derived therefrom, may disclose such contents or evidence to an investigative or law enforcement officer and may disclose such contents or evidence while giving testimony under oath or affirmation in any criminal proceeding in any court of this Commonwealth or of another state or of the United States or before any state or Federal grand jury or investigating grand jury.

(b.1) **Criminal cases.--**Any person who by means authorized by section 5704(17) (relating to exceptions to prohibition of interception and disclosure of communications) has obtained knowledge of the contents of any wire, electronic or oral communication, or evidence derived therefrom, may in addition to disclosures made under subsection (b) disclose such contents or evidence, on the condition

that such disclosure is made for the purpose of providing exculpatory evidence in an open or closed criminal case.

18 Pa. C.S. § 5717 (emphasis added).

Turning to the issue of immunity, Section 5725(b) of the Wiretap Act specifically indicates "[t]o the extent that the Commonwealth and any of its officers, officials or employees would be shielded from liability under this section *by the doctrine of sovereign immunity*, such immunity is hereby waived for the purposes of this section." 18 Pa. C.S. § 5725(b) (emphasis added). Thus, the Wiretap Act expressly waives sovereign immunity.

Prosecutors concede the Wiretap Act waives sovereign immunity, but assert they maintain high public official and prosecutorial immunity. High public official immunity is a category of common law immunity that acts as an absolute bar to protect high public officials from lawsuits arising out of actions taken in the course of their official duties and within the scope of their authority. *Doe v. Franklin Cnty.*, 174 A.3d at 603. "Governmental immunity is an absolute defense" and is not subject to any exception "beyond th[ose] exceptions granted by the legislature." *Zauflik v. Pennsbury Sch. Dist.*, 72 A.3d 773, 797 (Pa. Cmwlth. 2013). The scope of high public official immunity is very broad as "[a]bsolute privilege, as its name implies, is unlimited and exempts a high public official from all civil suits for damages arising out of . . . actions . . . provided the . . . actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction." *Durham v. McElynn*, 772 A.2d 68, 69 (Pa. 2001). The Supreme Court has "never called into question, much less overruled, the common law doctrine of absolute privilege for high public officials." *Lindner v. Mollan*, 677 A.2d 1194, 1196 (Pa. 1996). "[A]bsolute immunity from civil liability for high public officials is the only

legitimate means of removing any inhibition which might deprive the public of the best service of its officers and agencies." *Doe v. Franklin Cnty.*, 174 A.3d at 603.

In Pennsylvania, high public official immunity has been held to apply to district attorneys. The public interest requires district attorneys be able to carry out their duties without being hampered by civil suits for actions taken in their official capacities. *Durham*, 772 A.2d at 69-70. "The public would indeed suffer if the prosecution of criminals were impeded, as would be the case if district attorneys were not accorded absolute immunity." *Id.* at 69-70. Similarly,

> [a]ssistant district attorneys . . . are essential to district attorneys in fulfilling responsibilities of their high public offices . . . in carrying out the prosecutorial function. To subject assistant district attorneys acting on behalf of the district attorney to liability would deter all but the most courageous and most judgment-proof from vigorously performing their prosecutorial functions, and would inevitably result in criminals going unpunished.

*Id.* at 70 (internal citations omitted). The public has an interest in seeing assistant district attorneys are not impeded in the performance of their important duties and that interest "dictates that assistant district attorneys be immune from suit." *Id.* Therefore, as prosecuting attorneys, Prosecutors have high public official immunity.

The question we must address is whether Prosecutors' high public official immunity has been waived for purposes of alleged Wiretap Act violations. In considering this, we are mindful that we must construe exceptions to immunity strictly. *Doe v. Franklin Cnty.*, 174 A.3d at 607-08. We may find immunity has been waived only where waiver is expressly stated by the General Assembly. *Id.* The Pennsylvania Supreme Court has held that where the General Assembly does

11

not "specifically and intentionally abrogate high public official immunity[,]" a finding of implicit abrogation is not supported by the law. *Id.* at 608.

Here, Section 5725(b) of the Wiretap Act specifies "[t]o the extent the Commonwealth and any of its officers, officials or employees would be shielded from liability under this section *by the doctrine of sovereign immunity*, such immunity is hereby waived for the purposes of this section." 18 Pa. C.S. § 5725(b) (emphasis added). While sovereign immunity is expressly and specifically waived in Section 5725, the statute remains silent as to the waiver of any other form of immunity, including high public official immunity or prosecutorial immunity. Thus, we must consider whether the General Assembly intended to abrogate high public official immunity for prosecutors by expressly waiving sovereign immunity.

The best indication of legislative intent is the plain language of the statute. *Commonwealth v. Shiffler*, 879 A.2d 185, 189 (Pa. 2005). We look to the plain language of the Wiretap Act to determine the General Assembly's intent regarding its immunity waiver. *See* 1 Pa. C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").

In considering the plain language of the Wiretap Act, we look to the Wiretap Act's defined terms. While "person" is defined as "[a]ny employee, or agent of the United States or any state or political subdivision thereof[,]" 18 Pa. C.S. § 5702, the General Assembly chose to separately and specifically define "law enforcement officer" as "[a]ny officer of the United States, of another state or political subdivision thereof . . . who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter . . . and any attorney authorized by law to prosecute or participate in the prosecution of

12

such offense." *Id.* While law enforcement officers would fall under the definition of "persons" under the Wiretap Act, the General Assembly chose to carve out a separate definition to address those individuals. If the General Assembly intended to abrogate otherwise applicable immunity for "law enforcement officers," it could have used the defined term in Section 5725. However, it makes no mention of law enforcement officers in Section 5725 where it addresses civil liability.

Instead, the General Assembly provided additional sections which address law enforcement officers under the Wiretap Act. In the next section, Section 5726, the Wiretap Act provides a specific cause of action for a law enforcement officer's intentional violation of the provisions of the Wiretap Act. Section 5726 states that an aggrieved party has the right to bring an action against an investigative or law enforcement officer seeking the officer's removal from office because of the officer's intentional violation of the Wiretap Act. 18 Pa. C.S. § 5726. Notably, consistent with the doctrine of high public official immunity, this section makes no mention of permitting a party to sue for damages in a suit against law enforcement officers.

Additionally, in Section 5717, the General Assembly specified that a law enforcement officer who obtains knowledge, by any authorized means, of the contents of any oral communication may use the contents to the extent such use is appropriate to the proper performance of the officer's official duties. 18 Pa. C.S. § 5717. We look at our Pennsylvania Supreme Court's decision in *Karoly v. Mancuso*, 65 A.3d 301, 308 (Pa. 2013), in which the Court interpreted this section of the Wiretap Act. The facts of *Karoly* are as follows. A defense attorney accused a county detective and an assistant district attorney of violations of the Wiretap Act. *Id.* The county detective and assistant district attorney were

13

investigating two individuals for theft and drug-related offenses. *Id*. One of the individuals was defense attorney's client, while the other was the client's paramour, who was incarcerated. *Id*. During the investigation, the client's incarcerated paramour called the client, who was with the defense attorney. *Id*. All three parties took part in the telephone conversation, which the jail recorded. *Id*. As part of his investigation, the county detective obtained the recorded telephone conversation and played it for members of the district attorney's office. *Id*. Based on the contents of the recorded conversations, the assistant district attorney filed a motion with the court requesting defense counsel be disqualified from representing his client. *Id*. The assistant district attorney's motion and brief included quoted excerpts from the recorded telephone conversations. *Id*. The assistant district attorney did not file the motion or the subsequent brief under seal and, therefore, both became publicly accessible. *Id*.

In response, the defense attorney filed a complaint for removal from public office against the county detective and the assistant district attorney alleging multiple violations of the Wiretap Act. *Id*. Most notably, for our purposes, the defense attorney contended that the assistant district attorney violated Section 5703(2) of the Wiretap Act, making it unlawful to use or disclose to another person the contents of any intercepted communication, by disclosing the recorded conversations in his legal filings, which were not placed under seal. *Id*.

The Court analyzed this issue indicating:

> A [law enforcement officer] may only use intercepted communications as necessary "to the proper performance of his official duties." 18 Pa.C.S. § 5717(a.1). Likewise, subsection 5717(a) provides that information obtained under subsection (a.1) or (b) may only be disclosed to other investigative or law enforcement officers, and only to the extent that such disclosure is appropriate to the official

14

duties of the officer making or receiving the disclosure. *See* 18 Pa.C.S. § 5717(a).

The close observance of these statutory restrictions is especially important where private conversations are overheard by governmental authorities. This Court has expressed that the Wiretap Act is to be strictly construed to protect individual privacy rights. It is against this background that courts should assess whether investigative and law enforcement authorities have complied with the limitations imposed by the [Wiretap Act], including the limitations on use and disclosure appearing in Section 5717.

There is little doubt [the detective] properly used the tapes of the intercepted conversation by listening to them and playing them for prosecuting attorneys in the [district attorney's office]. This conduct was consistent with his investigative function and constituted a "disclosure . . . to another investigative or law enforcement officer" as allowed under Section 5717(a) . . . . [The assistant district attorney's] subsequent use of the conversation in an effort to have [the defense attorney] disqualified from further representing [his client] and to compel him to reveal [his client's] whereabouts was likewise within the proper performance of his duties.

*Karoly*, 65 A.3d at 310-11.

Based on a plain reading of Section 5717 and our Supreme Court's application of it to law enforcement officers, including prosecuting attorneys, the General Assembly intended for law enforcement officers to be permitted to use information that may otherwise be in violation of the Wiretap Act, so long as it is necessary to the "proper performance of his official duties." 18 Pa. C.S. § 5717(a.1). By carving out these acceptable use and disclosure provisions for law enforcement officers, the General Assembly specifically excluded law enforcement officers from liability under the Wiretap Act when their use or disclosure is done in the performance of their official duties.

The General Assembly did not provide a clear and unequivocal basis for civil suits against law enforcement officers, such as Prosecutors, when it enacted

Section 5725 of the Wiretap Act. In fact, by separately providing for acceptable use and disclosure provisions for law enforcement officers under Section 5717, and by separately providing a remedy of removal of a law enforcement officer who intentionally violates the Wiretap Act under Section 5726, the General Assembly has evidenced an intention to treat law enforcement officers uniquely under the Wiretap Act. Our review of the Wiretap Act does not support a conclusion that the General Assembly intended to abrogate high public official immunity for law enforcement officers. Because the General Assembly did not specifically and intentionally abrogate high public official immunity, Prosecutors maintain high public official immunity and may not be held liable under Section 5725 of the Wiretap Act for their use of the Recordings within the performance of their duties prosecuting Winig in the Criminal Action. Therefore, the trial court did not abuse its discretion or commit an error of law when it sustained Prosecutors' POs.

## CONCLUSION

For the reasons addressed above, we affirm the trial court's June 21, 2021 order sustaining Prosecutors' POs.[3]

_____
STACY WALLACE, Judge

---

[3] We are aware of the Pennsylvania Superior Court's recent decision in *Chiles v. Miller*, ___ A.3d ___ (Pa. Super., No. 45 EDA 2022, filed January 6, 2023), and, while this Court may look to a decision of the Superior Court for its persuasive value, its decisions are not binding on this Court. *A.S. v. Pa. State Police*, 87 A.3d 914, 919 (Pa. Cmwlth. 2014), *aff'd*, 143 A.3d 896 (Pa. 2016). We find the facts of this case are distinguishable from the facts of *Chiles* as the prosecuting attorney in *Chiles* disclosed the contents of the intercepted communication to civil attorneys. The disclosure was not in the course of the prosecuting attorney's official duties.

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason Winig,                                    :
               Appellant               :
                                 :
            v.                            :        No. 1423 C.D. 2021
                                 :
The Office of the District Attorney             :
of Philadelphia, Lawrence S. Krasner,          :
Esquire, Branwen McNabb, Esquire,              :
Michelle Michelson, Esquire,                   :
William Burrows, Esquire and                   :
Helen Park, Esquire                            :

# O R D E R

       **AND NOW**, this 24th day of February 2023, the Court of Common Pleas of Philadelphia County's June 21, 2021 order sustaining The Office of the District Attorney of Philadelphia's, Lawrence S. Krasner's, Branwen McNabb's, Michelle Michelson's, William Burrows's, and Helen Park's (collectively, Philadelphia District Attorney's Office) preliminary objections is **AFFIRMED**. Accordingly, the Philadelphia District Attorney's Office's Application for Leave of Court to File a Response to Appellant's Post-Submission Communication filed January 18, 2023, is **DISMISSED** as moot.

 

                                         _____
                                         STACY WALLACE, Judge